BL

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul T. Stavenjord, ) | No. CV 05-3024-PHX-DGC (GEE) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Corrections Corporation of America, et al., ) | |
| Defendants. ) | |

Plaintiff Paul T. Stavenjord filed a *pro se* action, which was removed to this Court, against Corrections Corporation of America (CCA), Corrections Officer Figueroa, Facility Grievance Officer Carl Richey, and Chaplain Aguirre, alleging that they violated his constitutional and statutory rights by seizing and refusing to return an altered prison blanket and a bandana which he used as a prayer mat and an offering cloth (Doc. #12). The Court will construe Defendants' Motion for Summary Judgment as a Motion to Dismiss to the extent that Defendants' argue Plaintiff failed to exhaust his 42 U.S.C. § 1983 claims. The Court will then grant Defendants' Motions to Dismiss and for Summary Judgment.

**I. Background**

Plaintiff alleged that on March 23, 2004, Figueroa searched Plaintiff's cell and confiscated various items, including two items of religious significance, a prayer mat and a personal offering cloth (bandana) (Doc. #12).[1]  Plaintiff's requests for the return or

---

[1] Plaintiff stipulated to the dismissal with prejudice his gender discrimination claims (Docs. ##27, 29).

1 replacement of these items were denied because only Native Americans can possess a
2 bandana and the prayer mats were in the chapel and only available for Muslims (Id.).
3 Plaintiff maintained that such actions resulted in the denial of his right to observe his
4 religious beliefs (Id.).

5 Defendants moved for summary judgment, arguing that (1) Plaintiff failed to exhaust
6 his administrative remedies as to his 42 U.S.C. § 1983 claims; (2) Defendants did not violate
7 the Religious Land Use and Institutionalized Persons Act (RLUIPA); (3) Defendants did not
8 violate Plaintiff's constitutional rights; (4) Plaintiff cannot recover emotional distress
9 damages; and (5) Plaintiff is not entitled to punitive damages (Doc. #38).  Defendants
10 attached various facility policies, documentation of Plaintiff's grievances, Requests for
11 Services submitted by Plaintiff, and Plaintiff's deposition (Doc. #37).

12 According to the summary judgment evidence, Plaintiff was serving a criminal
13 sentenced imposed by Alaska state courts.  Although the Alaskan Department of Corrections
14 retains legal custody of Plaintiff, it transferred physical custody to CCA, a private company
15 under contract with the State of Alaska, who housed Plaintiff in an Arizona facility (Doc.
16 #46). Plaintiff was an ordained minister with the Universal Life Church, and was authorized
17 to perform all Sacerdotal duties, including the marriage rite (Id., ex. 1).  In 2002, Plaintiff's
18 request to purchase two bandanas was granted (Id., ex. 2).

19 On March 23, 2004, Plaintiff's cell was searched and various items, including a prayer
20 mat and a bandana which Plaintiff maintained were of religious significance, were
21 confiscated (Doc. #37, exs. 1; 7 at 30-31; Doc. #46, ex. 4).  Plaintiff testified that the bandana
22 was an offering cloth which had a cross sewn in the corner and scriptures and writings on it
23 and in which Plaintiff kept Buddhist-type prayer beads (Doc. #37, ex. 7 at 34).  The prayer
24 beads were not confiscated (Id. at 35).

25 Plaintiff requested the return or replaced of these items (Doc. #37, exs. 1, 5).  He was
26 informed that his religious designation did not authorize his possession of these materials
27 because only Native Americans could possess bandanas (Id. exs. 1, 4-6).  Further, Plaintiff
28 was informed that he needed to define a reason or a belief behind the request (Id. ex. 6).

1   Plaintiff's requests always referred to a bandana, never an "offering cloth" (Id. ex. 2).
2   Plaintiff was also informed that he could not "check-out" a prayer mat as there were
3   insufficient mats for individual use (Id. ex. 2; ex. 7 at 50-52; ex. 8).  Plaintiff, however,
4   testified that even in the faith pod he could not use the prayer mat because he was not
5   Muslim (Doc. #49, ex. 1 at 51).  Plaintiff subsequently requested permission to purchase oil
6   for religious purposes, but was informed that he needed to be a member of a faith group and
7   submit a letter from the faith-group confirming his membership (Doc. #37, ex. 10).

8         Plaintiff submitted a Request to Change his Religious Preference, indicating that his
9   religious preference was omni-denominational Monastic Zen Muslim (Doc. #37, exs. 2, 9).
10  Plaintiff noted on the form that the requirement that he submit a letter confirming his
11  membership in a religion did not apply to him (Id. exs. 2, 9; Doc. # 48, ex. 7 at 24).  Chaplain
12  Aguirre asked Plaintiff to meet with him to discuss his request for religious items and his
13  religious designation (Doc. #37, ex. 1).  Plaintiff refused to respond to the request for the
14  meeting or to informed Aguirre of the religious significance of the confiscated items (Doc.
15  #37, exs. 2, 7 at 36; Doc. #49, ex 4 at 53).

16        Plaintiff testified that he was an omni-denominational Monastic Zen Muslim, which
17  indicated that he "takes in everything" (Doc. #37, ex. 7 at 23).  Specifically,
18  "omni-denominational" indicates that all religions are valid, "monastic" indicates that the
19  religion is based on self-study, "Zen" indicates that it is based on abstract philosophical
20  ideals, and "Muslim" indicates that the religion is ritualistic (Id. at 17-18).  Plaintiff believed
21  that "God is the goal and however one gets there is as valid as the next person" (Id. ex. 18).
22  Plaintiff conceded that his religion was not formalized, and there is no outside group or
23  church with whom to practice his religion (Id. ex. 7 at 23; Doc. #48, ex. 2 at 23-27).

24        Plaintiff testified that he continued to practice his religion without the confiscated
25  items; although it was more difficult (Doc. #37, ex. 7 at 22-23; Doc. #48, ex. 3 at 62).
26  Plaintiff would listen to tapes, mediate, write in his journal, study various religious texts, and
27  discuss his beliefs with others (Doc. #37, ex. 7 at 22-23, 29).  Plaintiff also used a rolled-up
28  blanket as a prayer mat (Id. at 32-33).  Plaintiff began storing his prayer beads in his locker

1 and continued to use them during meditation (<u>Id.</u> at 35). Plaintiff kept notes and scripture
2 writings on loose pieces of paper (<u>Id.</u>).

## II. Failure to Exhaust

A challenge to a § 1983 action due to the failure to exhaust administrative remedies "should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119-20 (9th Cir. 2003). This is primarily because summary judgment is granted on the merits, while a "dismissal of an action on the ground of failure to exhaust administrative remedies is not." <u>Id.</u> at 1119 (citations omitted). Accordingly, to the extent Defendants argue that Plaintiff failed to exhaust his administrative remedies, the Motion for Summary Judgment will be construed as a Motion to Dismiss.[2]

### A. Legal Standard

Pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act, a prisoner may not bring a lawsuit with respect to prison conditions under § 1983 unless all available administrative remedies are exhausted. <u>See</u> <u>Roles v. Maddox</u>, 439 F.3d 1016, 1017 (9th Cir.), <u>cert denied</u> 127 S.Ct. 232 (2006). Exhaustion is mandated "regardless of the relief offered through administrative procedures." <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). It is required in all inmate suits regarding prison life. <u>Porter v. Nussle</u>, 534 U.S. 516, 523 (2002). To be "properly exhausted," the prisoner "must complete the administrative review process in accordance with the applicable rules, including deadlines, as a precondition to bringing suit in federal court." <u>Woodford v. Ngo</u>, 126 S.Ct. 2378, 2384 (2006).

Defendants bear the burden of raising and proving the absence of exhaustion. <u>Wyatt</u>, 315 F.3d at 1119. The Court has broad discretion as to the method to be used in resolving the factual dispute. <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th Cir. 1988).

---

[2] Because Defendants did not argue that Plaintiff failed to exhaust his RLUIPA claims, the Court only will consider exhaustion with respect to Plaintiff's § 1983 claims.

- 4 -

**B. Analysis**

Under CCA regulations and policies, an inmate may grieve any matter that falls within CCA's control (Doc. #37, ex. 18). An inmate may not grieve issues concerning classification or disciplinary decisions, administrative transfers, prohibited conduct of prisoners, or Alaska Parole Board or court procedures or decisions (Id.). To properly exhaust his administrative remedies, an inmate must first attempt to resolve the problem informally by submitting a "Request for Interview" (Doc. #37, ex. 18). If the inmate is unable to resolve the issue informally at that step, he must file a formal Grievance within 30 days from the date of the alleged incident (Id.). Formal grievances are screened by the Grievance Coordinator (Id.). A dissatisfied inmate may seek formal review of the Grievance Coordinator's conclusion to the Superintendent or Deputy Director (Id.). The inmate may appeal that decision to the Deputy Director or Director, whose decision may be appealed to the Grievance and Compliance Administrator (Id.).

According to the evidence, Plaintiff submitted a Prisoner Grievance on May 10, 2004, more than 30 days after his items were confiscated (Doc. #37, ex. 3). The Grievance Coordinator dismissed Plaintiff's grievance because it was not filed within 30 days of the incident (Id.). Plaintiff appealed that decision to the Warden, who addressed the issue of timeliness and the merits of Plaintiff's claim (Id., ex. 2). Plaintiff did not, however, seek review from the Grievance and Compliance Administrator. Defendants have established that the Department had a grievance procedure that was available to Plaintiff and of which Plaintiff failed to fully avail himself.

Plaintiff argued that because his issues concerned disciplinary action, a grievance procedure was not available or, alternatively, that he fully exhausted his remedies. The first contention fails because there is no evidence that Plaintiff was disciplined for possession of the confiscated items. The second contention fails because there is no evidence that Plaintiff ever submitted a final appeal. Rather, the evidence reflects that Plaintiff believed he could grieve his claims. Despite his complaint having been addressed on the merits after he filed a late grievance, he did not appeal his claims to the next level. Plaintiff therefore failed to

1 exhaust his claims regarding the confiscated items. As to Plaintiff's claim concerning the
2 failure to replace the confiscated items, the record is devoid of any evidence that Plaintiff
3 filed any grievance complaining that his religious items were not replaced.

4 Plaintiff has failed to exhaust his administrative remedies and his § 1983 claims will
5 be dismissed. Further, as discussed in the following section, because Defendants are entitled
6 to summary judgment on Plaintiff's RLUIPA claims, they also would be entitled to summary
7 judgment on the merits of his § 1983 claims.

**III. Motion for Summary Judgment**

9 Plaintiff alleged that the confiscation of and refusal to replace his prayer mat and
10 offering cloth violated his rights under RLUIPA (Doc. #12). Defendants argue that they did
11 not violate RLUIPA because they had two compelling interests in maintaining prison safety
12 and security (Doc. #38). First, the restrictions prevent inmates from, among other things,
13 using altered facility blankets and bandanas to connote gang affiliations (Id.). Second,
14 making exceptions to the restrictions based on ambiguous and undefined individual religious
15 beliefs would prevent prison officials from maintaining reasonable contraband policies and
16 would be overly burdensome (Id.). Defendants also argue that Plaintiff's religious practices
17 were not substantially burdened (Id.).

18 Plaintiff responded that his beliefs were personal and sincerely held, he was entitled
19 to worship as he pleases, and there was no compelling governmental interest in refusing him
20 a prayer mat or an offering cloth (Doc. #46). Plaintiff also argued that he was authorized to
21 purchase the bandana more than two years before the seizure (Id.).

22 A court must grant summary judgment if the pleadings and supporting documents,
23 viewed in the light most favorable to the non-moving party, "show that there is no genuine
24 issue as to any material fact and that the moving party is entitled to judgment as a matter of
25 law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
26 Under summary judgment practice, the moving party bears the initial responsibility of
27 presenting the basis for its motion, and identifying those portions of the record, together with
28 affidavits, which it believes demonstrate the absence of a genuine issue of material fact.

1  Celotex Corp., 477 U.S. at 323.  If the moving party meets its initial responsibility, the
2  burden then shifts to the opposing party who must demonstrate that the fact in contention is
3  material and that the dispute is genuine.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248,
4  250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).
5  A fact is material if it might affect the outcome of the suit under the governing law.
6  Anderson, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable
7  jury could return a verdict for the nonmoving party.  Id. at 250.  The opposing party need not
8  establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed
9  factual dispute be shown to require a jury or judge to resolve the parties' differing versions
10 of the truth at trial."  First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89
11 (1968).  Finally, when considering a summary judgment motion, the evidence of the
12 non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."
13 Anderson, 477 U.S. at 255.

14     "Section 3 of RLUIPA provides, in relevant part, that '[n]o government shall impose
15 a substantial burden on the religious exercise of a person residing in or confined to an
16 institution . . . even if the burden results from a rule of general application,' *unless* the
17 government established that the burden furthers 'a compelling governmental interest,' *and*
18 does so by 'the least restrictive means.'"  Warsoldier v. Woodford, 418 F.3d 989, 994 (9 Cir.
19 2005) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)) (emphasis in original).  Based on the facts
20 of this case, Defendants are entitled to summary judgment because Defendants did not place
21 a substantial burden on the exercise of Plaintiff's religion.

22     Plaintiff bears the initial burden of demonstrating that Defendants placed a substantial
23 burden on the exercise of his religion.  Id..  A "substantial burden" is one that is
24 "'oppressive' to a 'significantly great' extent."  Id. at 995 (quotations omitted).  It "must
25 impose a significantly great restriction or onus upon [religious] exercise."  Id. (quotations
26 omitted).  A substantial burden includes situations "'where the state . . . denies [an important
27 benefit] because of conduct mandated by religious belief, thereby putting substantial pressure
28 on an adherent to modify his behavior and to violate his belief.'"  Id.

Plaintiff alleged that possession and use of a prayer mat and an offering cloth is "a sincerely held belief," but conceded that he was able to practice his religion without them. In place of the prayer mat, Plaintiff used a rolled-up blanket. In place of an offering cloth, Plaintiff put his prayer beads in his locker, wrote scriptures on slips of paper, and used a towel to cover his eyes while meditating. Plaintiff has not presented evidence from which a reasonable trier of fact could find that these modifications to his religious practices are "oppressive to a significantly great extent" or amount to a "significantly great restriction or onus upon [his religious] exercise." Id.

More importantly, Plaintiff proffered no evidence that he would have been denied access to a prayer mat or an offering cloth had he merely submitted the proper paperwork or met with Aguirre. The requirement that an inmate complete paperwork or meet with his chaplain in order to obtain religious items is not a substantial burden. See Resnick v. Adams, 348 F.3d 763, 768 n. 6 & 771 (9th Cir. 2003). Absent evidence that authorization to possess the religious items would have been denied had Plaintiff met with the chaplain, Plaintiff cannot demonstrate that Defendants substantially burdened the exercise of his religion.

**IT IS ORDERED:**

(1) Defendants' Motion for Summary Judgment (Doc. #38) is construed as a Motion to Dismiss to the extent Defendants argue Plaintiff failed to exhaust his administrative remedies. Defendants' motion is **granted** and Plaintiff's § 1983 claims are dismissed without prejudice.

(2) Defendants' Motion for Summary Judgment (Doc. #38) is **granted**. Plaintiff's RLUIPA claims are dismissed with prejudice.

(3) The Clerk of Court must enter judgment in favor of Defendants, and dismiss Plaintiff's action.

DATED this 26th day of January, 2007.

_David G. Campbell_
David G. Campbell
United States District Judge